and Urban Development. Good afternoon, Your Honor, and may it please the Court, my name is actually Michael Barbosa. How do you spell your name, sir? B-A-R-B-O-S-A. Okay. From Seton Hall University School of Law, Center for Social Justice. You can actually pull that microphone up a little bit. Yeah, perfect. I represent Appellant's HUD Tenants Coalition and Mr. Samuel Rivers. I'd like to reserve five minutes for rebuttal. Fine. Your Honor, what we have here are approvals by HUD and the New Jersey Housing and Mortgage Finance Agency of rental increase and energy conservation plan notices that are devoid of substance and do not comply with federal statute. The 1988 amendments to the Federal National Housing Act established a mandatory obligation for the Secretary of HUD to assure that tenants had a seat at the table to be able to participate meaningfully as tenants in a rent review process. Congress did not intend, Your Honors, to authorize courts to engage in any material degree of review over the agency's ultimate substantive decision, but Congress did intend to do as manifested by the mandatory text of 12 U.S.C. Section 1715Z-1B, subsection B, require that tenants be given sufficient information about the basis for a rental increase to be able to submit a meaningful comment in opposition. If you look at our opening brief on page 27, the relevant language is there. The Secretary shall, where the Secretary's written approval is required with respect to an owner's request for a rent increase, tenants have adequate notice of reasonable access to relevant information about an opportunity to comment on a request and that such comments are taken into consideration by the Secretary. How do we know what adequate notice means? We ask the courts to use the plain language of what constitutes a narrative statement and it's our position that the notices that the tenants received were not reasonable for any stretch of the mind looking at a general definition of what a narrative statement means. Now, of course, the government and the state claim that there's no jurisdiction here because this is not subject to judicial review, but your position is that the aspects of providing proper notice are different from giving you the right to challenge an actual rent increase. Is that your position here? That's correct, Your Honor. Why aren't they so tied together that the government isn't right? Well, we argue that this is basically about the procedures in terms of the enforcement of the rules. The tenants do not want, of course they would want, but we're not arguing any type of substantive determinations. Our client, Mr. Rivers, he's not here today just because he's unhappy with a rental decision. We're here because the National Housing Act, when they amended the National Housing Act in 1988, they included that tenants should have meaningful access and participation and we're arguing that the notices that basically say the reason why they're raising the rent is because of insurance or because of maintenance are not sufficient for average tenants for Mr. Rivers to meaningfully comment. That's all we want, just fill in the details for clients to meaningfully participate. Now, Congress did not guarantee any particular result with this and we don't want any judicial micromanagement. Instead, we want this mandatory process in which both the applicant mortgagers and tenants that they house have a fair and adequate opportunity to convince the agency of the wisdom of their position. Now, with respect to the environmental conservation plan, HUD regulations specifically indicate that this be done in one of two ways, each precise and detailed and each requiring direct reference to energy conservation plan. In this case, and this can be seen in our opening brief on page 23, it indicates that it's a narrative report coded to reference the plan or a copy of the annotated plan. If you look at the notices that were given, it doesn't even come close to HUD's own guidelines. Because of this, HUD and the Housing and Mortgage Finance Agency completely failed in enforcement of a sponsor's obligation to provide a narrative statement of the basis for the rent increases it sought and completely failed in obligations to report in precise terms the status of its compliance with the energy conservation plan. Now, HUD has at least by inference accepted these notices. I think that's the basis on which the district court found that the agency had interpreted their own regulations to find that whatever was submitted here was satisfactory. Don't we owe some deference to that determination by HUD that these notices were in fact adequate? Your Honor, deference can always be given to an administrative agency such as HUD if they're making a substantive determination. We're arguing in this case that there was no administrative agency action with respect to a definition of the narrative statement was complete. It was basically approved by the Housing and Mortgage Finance Agency and approved by HUD. There was no reasoning given. Had there been that sort of explanation in terms of the reasons why this definition, why this notice was sufficient to qualify under the definition of a narrative statement, then we would not be here today. Tenants simply want to be able to meaningfully participate in the process. What did the district court say? Why was the district court wrong in this regard? Your Honor, the district court held that it was up to agency discretion to ... They didn't want to second-guess an agency's discretion. It didn't analyze. It said that if HUD said that the notices were sufficient, they were sufficient, basically. We're arguing that the district court was wrong because they didn't analyze or apply the 1988 amendment of the National Housing Act to show the mandatory language in terms of the clients participating. Tenants such as my clients, the Rivers and HUD Tenants Coalition, were thereby completely left in the dark about the basis for the proposed increase and indeed in the dark about the fact that Zion Towers was not even a viable legal entity as HUD and the Housing and Mortgage Finance Agency well knew at the time it saw a rent increase. Rivers simply didn't have an opportunity mandated by the statute and regulations to submit a meaningful response to the application of the rental increase. Now, defendants will argue that it was ultimately approved, but as we mentioned before, an agency had made an express determination about how it interprets the statutory regulatory legal standard that would trigger administrative deference. However, there's no indication that this was done or whether there was any reasoning given. The mere fact of approval does not indicate that this was an agency action. Could you address your argument that there was no valid and there was no nonprofit status so therefore somehow they weren't a qualifying entity, weren't a qualifying mortgagee? How does that help you? If they weren't a qualifying mortgagee, doesn't that mean then that they didn't even have to go through these procedures to give notice? I'm just not sure where that argument leads you. Your Honor, we concede that point with respect to that. But we will mention that the mere fact of the sponsor not being a viable entity at the time when the rental increases were applied for, we wanted to really point out the fact that HUD and the Housing and Mortgage Finance Agency are entities that are supposed to monitor these activities and that it just shows the lack of notice, basically, but we will concede that point. All right. Thank you. Here, a congressional scheme places great weight on an agency's ultimate substantive determination, but only after a full range of relevant stakeholders have had the opportunity to make their case. We show analogy with the Individuals with Disability and Education Act. The scope in that case of substantive review over ultimate determination by a school district is extremely limited, but Congress placed great importance on the procedural rights of parents potentially disadvantaged. Does this exacting review of whether parents have a meaningful opportunity to participate is the same thing that we want here for tenants? Thank you, Your Honor. Good. Mr. Barbosa, thank you very much. Ms. Buchanan? Good afternoon, Chief Justice Sotoka and Honorable Judge Renzel and Judge Thomson. I'm Assistant United States Attorney Colette Buchanan on behalf of the Federal Defendants. Your Honor, my co-counsel and co-defendants' counsel and I have split our time seven minutes apiece. Good. Thank you. Your Honor, preliminarily we take the position that the court does not have judicial review over a decision of HUD to approve rent increases. There's case law that supports the position that because the ultimate decision as to whether the rent increase should be allowed is discretionary, the court should not venture into that and the APA does not provide judicial review over those decisions. The procedures that are created as part of the statute or in this case as part of the regulations, the procedures that provide for tenant notice and participation in the process of seeking a rent increase are all part of the exercise of the discretion of the Secretary in determining whether to grant a rent increase. So therefore, the entire process should be restricted from judicial review. Are you saying that if no notice had been given at all that the tenants wouldn't have recourse? Your Honor, if no notice had been given, the tenants would have recourse. Under what statute? Under the APA, Your Honor. Well, then why is not the adequacy when the regulations call for adequate notice, why is not the adequacy of the notice something that can be brought under the APA? The adequacy of the notice is something that gets into the discretion of the agency and the agency's interpretation of its own rules. The agency's determination, as the district court found below, the agency interpreted its own regulations to conclude that the notice that was provided in this, the notices that were provided in regard to the rent increases in this case were sufficient. That that is part of whether, if there had been no notice and the agency had completely failed to abide by its regulation, then the APA would provide for review under the line of cases that said that the agency, that the court can review whether an agency is complying with its own regulations. But here we're getting into the interpretation of the regulation. But if the charge is that what they're doing violates a regulatory command, don't we have case law that says that's the cause of act, that's the claim, that we have jurisdiction? Your Honor, there is support for the position that there is jurisdiction where they're making the allegation that we don't comply. But we would caution the court that in examining this particular case, where they're getting into the nuance of what constitutes a narrative statement, it is not merely did we comply with the regulation, but the interpretation of the regulation that's at issue. But doesn't that come with the scope of review and the standard of review, our deferential review as compared to our jurisdiction, i.e., our saying, I'm sorry, we just, there's a threshold issue here, we're not even looking at it. Your Honor, it may go more towards the scope of review. Well, that makes a big difference. And it means that there is jurisdiction to hear the case. Did you make this argument before the district court? We did make the argument before the district court. The district court didn't address our argument as to whether there was any judicial review, which is why we repeated it here. Although, granted, that's not the strongest argument that we have to make. All right, well, let's hear your strongest argument. Your Honor, that is with regard to the allegation that HUD did not comply with the regulations. It's clear that HUD did. Now, can that be decided on a motion to dismiss, or should that have been decided on a motion for summary judgment? Well, Your Honor, I think it could have been decided on a motion to dismiss because it goes as to whether the plaintiff has stated a claim. That was the basis under which the court ruled that the plaintiff had failed to state a claim because the actions that he complained about went to the interpretation of the regulation, and the agency had deference with regard to its own interpretation. And that's decided on a failure to state a claim? I believe that's what the district court ruled. I know that's what he did. I'm asking whether it was proper to do so. Well, Your Honor, I believe when we filed our papers, we filed it as a motion to dismiss and or summary judgment motion under Rule 56. The parties did submit materials along with the briefing, so that it could have been decided on the paper, certainly, whether it was properly a 12B1 or Rule 56. I think it was kind of a combination of the two. But I think that it's not a determination that needs to go forward in terms of fact-finding. Whether or not the narrative statement was sufficient is really not a question of fact-finding. It's a question of what is the agency's requirement. The statute doesn't require anything specific. It says narrative statement, and it says a status report on the energy conservation plan. Not a new plan every time there's an increase request, but a status report. And those issues can certainly have been decided on the papers rather than involving discovery. Discovery isn't going to tell you what is legally sufficient as a narrative statement. Plaintiff's complaint is that the information that they clearly admit and acknowledge they received, Mr. Rivers was able to submit comments on them, and the comments were considered by HMFA. They were forwarded on to HUD and considered by HUD. And, in fact, one rate increase was denied completely, the one that was justified by insurance. That wasn't approved. And another increase was denied in part. The full increase request, it wasn't. So it's clear that the process, that Mr. Rivers was able to participate in the process, and that it did have the effect intended by Congress, and that there was a participation. Mr. Rivers has a point. The plaintiffs haven't said what it is that's lacking from the narrative statement or in what way they were unable to participate in the comment process. We think that it's clear that they were able to participate. So in that sense, the plaintiff's claim fails because his own complaint, I believe this is why the district court rules it on as a 12B1 motion, based on the allegations of the complaint itself, the plaintiff acknowledged that he had noticed, he did comment, that the agency did take action. And so the court interpreted that action by the agency as an interpretation of its own rules, which is appropriate where it's not arbitrary or capricious, where the action is arbitrary or capricious. Your Honor, I see that my time is up. If there are further questions, I... Do you have anything else? No, I'm done. Okay, good. Thank you very much, Ms. Buchanan. Thank you, Your Honor. Mr. Shawson. Thank you. May it please the court. My name is Robert Shaughnessy. I'm a Deputy Attorney General in the state of New Jersey. And I represent today defendants Appellees Marge Dellavecchia, the Executive Director of the New Jersey Housing and Mortgage Finance Agency, and Anthony Capon, the Director of Property Management Construction. The agency is not, and never has been, a party to this action. U.S. District Court Judge William J. Martini, granting the motions to dismiss, brought this case down to the two central issues. First, whether Zion Towers Incorporated was able to seek rent increases while its non-profit corporate status had temporarily lapsed. If that matter has been conceded by my adversary, then I will leave that alone. If the court would like me to hear that, I'm happy to go on. I don't think that's necessary. Okay, Your Honor. The only other issue raised is whether the tenants of Zion Towers were provided with legally sufficient information, in particular, the narrative statements and the energy conservation plan updates before the rent increases were approved. Judge Martini answered that question, yes, and so should this court, and affirm the orders of dismissal below. Very briefly, by way of background, the Housing and Mortgage Finance Agency made a first mortgage loan to this project in the amount of $5,413,000. It also provided subordinate financing on the project. As a result of this beneficial and cost-effective financing, the sponsor, as we call it, subjected itself to regulatory control of the agency. The project also receives federal subsidy under the 236 program, which really creates an interest rate reduction program on behalf of the sponsor administrated by the agency. Correspondingly, there is federal regulatory oversight as well. While the regulations of the agency and HUD near each other are consonant, if you will, at all times HUD's regulations, if there is an inconsistency, prevail, as well as the ultimate approval by HUD prevails over any recommendation or approval by the New Jersey Housing and Mortgage Finance Agency. Turning to the remaining one central complainant point, that is the alleged unsatisfactory information of the narrative statements in energy conservation plans. At the outset, this is a case not about whether these statements or reports exist or don't exist, but rather about their adequacy or sufficiency. Appellants believe that they're inadequate. The sponsor submitted them first to the HMFA, believing them to be adequate.  HUD looked at them as well, found them to be adequate under its regulations and guidelines. Ultimately, Judge Martini reviewed the matter and found that they were legally sufficient or adequate. The agency's regulations require that, among other things, rent increase applications include for Section 236 projects, as with this one, that there's a status report on the project's implementation of its current energy conservation plan. It also requires, pertinent to this matter, that there be some narrative statement or statement of reasons for the rent increase. As the district court correctly concluded, there is no further definition or specification as to these plans or statements. What we have here is really a policy disagreement, if you will, between what suffices vis-à-vis the appellants and the agencies. If that's the case, why shouldn't this have been decided on summary judgment and not on a motion to dismiss? I think that, appropriately, it was decided on a summary judgment. Pardon me, it was appropriately decided on a motion to dismiss. Typically, any review of rent increases are subject to appellant review from the agency, and they go up to the New Jersey appellate division, and the agency final determination is then reviewable in the appellate division. In fact, in my related cases, there was a case cited whereby this very appellant, Mr. Rivers, appealed the agency's action, and there was one of the rent increases that is subject to this matter. And the ultimate determination by the court was that it really is for HUD to make the final determination. Anything the agency does is advisory. But I think it was appropriately decided via motion to dismiss, and we're here today. I'm still not sure why. Because I think it truly is a matter that can be looked at based upon the pleadings and the documents attached to both of them. What was the failure in the part of plaintiff to plead a claim here? The plaintiff failed to plead a claim upon which relief could be based upon, and that's how the court ruled, failure to state a claim upon which relief could be based upon. Didn't the court have to decide the adequacy of the notice and that it would defer to the agency's view of the adequacy of the notice? Were the papers filed with the complaint sufficient to do that, or was there any discovery? No, Your Honor, there was no discovery. However, I believe that based upon the underlying record and the law, that there was sufficient indication. I think what the appellants complain about is the lack of the right to participate. And if one looks at the record, there's clearly participation here. I'm saying the record is replete with notice to the plaintiff. Now you're saying the record is replete, then we're getting into a summary judgment standard as compared to failure to state a claim. I'm saying the record before this court is replete with the notice and opportunity to be heard, Your Honor. At this point, it's the position of defense that this court should affirm the decision below that, in fact, the notices and accompanying materials were sufficient and there was no violation of any applicable law and that the underlying opinion in order should be affirmed. If there's no other question, I'm happy to submit other papers. Thank you, Mr. Shunson. Thank you. Thank you for your time. Good. Mr. Barbosa. Very briefly, Your Honor. Two points, one in reference to Ms. Buchanan with respect to the argument that there's no discretion to review the rent increases. The cases that were cited were prior to the amendments from Congress in 1988 to the National Housing Act where it changed the ability of tenants to have meaningful access. And with respect to the second point from HMFA, there was no record besides the complaints that we submitted. There was never any discovery done. We believe it was premature. We also represent HUD Tenants Coalition. Did you ask for discovery? No, we didn't ask for discovery, Your Honor. What was the understanding, that you were going to submit everything on the record and on the documents? What did the district judge understand? Well, it was my understanding that, and I was not the attorney of record during that time, but it was my understanding that it was basically a motion to dismiss on the pleadings. I'm unfamiliar with the process with respect to whether or not there was any type of discovery and whether or not it was denied. Ms. Buchanan says they found a motion to dismiss and or for summary judgment. So then, good. I haven't confirmed that unless you have any questions. Good.  Thank you, Your Honor. We thank all counsel for helpful argument. We will take the matter under advisement.